*193 OPINION OF THE COURT
Alice Schlesinger, J.
On October 21, 2003, the first day of the implementation of a new policy at Far Rockaway High School where petitioner Eileen Smith was a tenured Social Studies teacher, an incident occurred which led to an unsatisfactory rating for Ms. Smith dated June 24, 2004 for the 2003-2004 school year. It is this rating that petitioner is challenging by way of this CPLR article 78 proceeding.
The new policy consisted of periodic sweeps by the school administrators as a means of forcing students to get to their classrooms on time. One minute after the late bell had rung signaling that classes had changed, teachers were required to lock their classroom doors. The locked-out students would then have to report to an assigned place to get a special pass to be admitted to their classrooms. The students, not unexpectedly, were hostile to this new procedure, and in the petitioner’s class, the ones locked out banged on her door to compel the teacher to let them in. Ms. Smith then attempted to leave the room to get help, but two students in the classroom barred her way by holding the door closed. She became desperate.[1]
Ms. Smith sought help, which finally came when the assistant principal appeared. By that time, things had quieted down. However, at her hearing Ms. Smith acknowledged having used inappropriate language during the chaotic time. Her United Federation of Teachers adviser, who was present and represented her at her hearing, said that Ms. Smith had said: “This ‘fucking’ language has to stop. I do not want abusive or profane talk in the class.” Ms. Smith had also reportedly said: “I will not continue until the stupids stop,” and then presumably in an effort to clarify added: “I mean the stupid remarks. I am not calling anyone stupid.”
After the incident, an investigation was conducted by the principal, Cheryll Jones (later retired and thus unavailable to testify at the hearing). This investigation included a review of statements by members of the class, as well as a meeting with Ms. Smith. It was concluded by a November 12, 2003 letter to *194 Ms. Smith from principal Jones finding that petitioner had “committed acts which are prohibited by the Chancellor’s Regulation A-420 Corporal Punishment and Chancellor’s Regulation A-420 Verbal Abuse which constitutes unacceptable teacher deportment.” The letter concluded that the finding “may lead to disciplinary action, including an Unsatisfactory rating and termination.”
Petitioner filed a grievance challenging this letter, one at which she prevailed after a hearing held on December 7, 2005. The arbitrator, Martin F. Scheinman, Esq., ruled in a decision dated January 3, 2006 that “[t]he letter of November 12, 2003 shall be deleted from Eileen Smith’s file because it is unfair and inaccurate as these terms have been defined by the parties.”
Mr. Scheinman, however, limited the effect of his ruling to the discrete issue before him, stating that “[t]his decision shall not be cited by either party as a determination of the underlying facts nor shall it preclude either party from relitigating the underlying facts.”
Before this January 3, 2006 determination of the grievance challenging the November 2003 letter, Ms. Smith had been given a copy of the June 15, 2004 “Unsatisfactory” rating at issue herein. Ms. Smith had signed to acknowledge receipt of the “U-Rating” on June 24 and had immediately appealed it. However, she had also asked to postpone the appeal until she had received a final decision on her grievance challenging the letter. Thus, after arbitrator Scheinman had ruled in Ms. Smith’s favor regarding the letter in January 2006, Ms. Smith’s union representative informed the department’s Office of Appeals that she wished to expedite her appeal of the U-Rating.
That hearing was held on May 31, 2006 before the chancellor’s designated chairperson, Leila G. Zuckerman. Ms. Smith was accompanied by her union representative, Michael Gotlieb. Denise Hallett, the current principal of the Far Rockaway school, was there, and the assistant principal Jocelyn Badette appeared by telephone.
In the “Background Data” section of her decision, chairperson Zuckerman stated that “[t]he basis of this ‘Unsatisfactory’ rating was a substantiated A-420.” This remark had been taken directly from the U-Rating which principal Jones had prepared where the comment appears under “Additional Remarks.” The A-420 itself had been prepared by assistant principal Badette. This document, which was used at the hearing over the petitioner’s objection because she had not been given a copy of *195 it until a few minutes before the hearing, was largely relied upon by the chairperson in sustaining the U-Rating. That, together with Mr. Gotlieb’s acknowledgment that Ms. Smith had made the statements quoted earlier, formed the basis for the decision denying Ms. Smith’s appeal. Specifically, chairperson Zuckerman made the following findings:
The chairperson carefully considered the facts and various arguments presented by the appellant and the administration.
The documentation, although substantial in part, leaves many questions about the hostile environment which escalated into an incident. Ms. Smith called for help three times. When the assistant principal arrived, she found the class to be quiet.
Unfortunately it has been clearly acknowledged that inappropriate language was used by the appellant. This may also have motivated some of the hostility in the class. The A-420 does acknowledge that inappropriate language constitutes verbal abuse.
It is recommended that the appeal be denied and rating of “Unsatisfactory” be sustained.
Discussion
Both sides here agree that teacher evaluations and appeals of unsatisfactory ratings must be conducted in compliance with the formal procedures promulgated pursuant to 8 NYCRR 102.2 (o) (2) of the regulations of the Commissioner of Education. In the City of New York, those procedures are set forth primarily in two handbooks prepared by the Division of Human Resources; namely, “Rating Pedagogical Staff Members” and “The Appeal Process.” The “Rating” handbook emphasizes the importance of completing evaluations based on documents in the teacher’s file. “The Appeal Process” requires, among other things, that before the hearing, the teacher/appellant “be furnished with a complete set of the documentation used by the Rating Officer to support the reason(s) for the adverse rating” (section A2).
In the case at bar, petitioner Smith asserts that the decision denying her appeal of the unsatisfactory rating was arbitrary and capricious and made in violation of lawful procedures. Specifically, petitioner asserts that chairperson Zuckerman erred in relying on (1) various student statements which had been excluded from the file, and (2) the A-420 report which had not been provided in advance. Had those documents been excluded as they should have been, no rational basis would exist for the *196 decision, petitioner asserts. Respondent counters that chairperson Zuckerman properly considered the A-420 and made a rational decision based on the evidence.
Turning first to the student statements, the record is clear that petitioner prevailed at her grievance challenging the November 12, 2003 letter from principal Jones, and that arbitrator Scheinman directed that the letter be deleted from Eileen Smith’s file as “unfair and inaccurate.” Chairperson Zuckerman properly sustained petitioner’s objection to the admission of the letter at the appeal of the U-Rating on this ground. Those student statements referred to in the letter and attached to it should also have been excluded. To the extent the Board offered additional student statements at the appeal which may not have been attached to the letter, those statements should have been excluded because they had not been shown to petitioner before the hearing as required by the above-quoted section A2 of the appeals process.
The A-420 should have been excluded as well. The chairperson erred in overruling petitioner’s objection to the inclusion of the A-420, stating that “[fit’s not given to the teachers.” (Transcript at 5.) Respondent contends that petitioner’s objection had no basis in the rules. However, as noted above, section A2 of the Appeal Process handbook expressly entitles the teacher to “a complete set of the documentation used” and expressly refers to the A-420 documentation “used by the Rating Officer,” and the rating officer in this case (principal Jones) used the U-Rating at issue. Neither the chairperson, nor the respondent Board, has pointed to any specific rule or regulation which would override section A2 and entitle the Board to withhold the A-420 from petitioner while still relying on it at the hearing.
The Commissioner and the courts have held that a U-Rating cannot be sustained where, as here, the chairperson improperly relies on documents which should have been excluded from consideration at the teacher’s appeal. Thus, for example, in Appeal of Dowrie (46 Ed Dept Rep — [Decision No. 15,506] [Dec. 22, 2006]), the Commissioner reversed the decision by the chancellor’s designee to sustain a U-Rating because the decision relied on documents which had not been included in the teacher’s file and shown to the teacher in advance. Citing to various provisions in the “Rating” handbook, the chancellor’s designee emphasized the importance of including relevant documents in the file in advance of the hearing so the teacher could grieve them and seek their removal. If it fails to provide the *197 teacher with that opportunity, the Board may not consider the documents at the appeal of the U-Rating.
Wholly unavailing is respondent’s attempt to distinguish Dowrie on the ground that the excluded documents were the only documents relied upon by the chancellor in that case. Respondent does not, and cannot, challenge the principle in Dowrie that a U-Rating cannot be sustained based on documents which the Board failed to give the teacher in advance.
This same principle was recently applied by Justice Lewis Bart Stone in Mangone v Board of Education (2007 NY Slip Op 32475[U] [Sup Ct, NY County 2007]). In Mangone, the court denied the Board’s motion to dismiss the teacher’s petition which challenged, among other things, an unsatisfactory rating. Citing to Dowrie, the court reiterated the rule that a U-Rating cannot be sustained based solely on documents which had not been provided to the teacher in advance of the hearing as part of the file.
Respondent nevertheless argues that the U-Rating was properly sustained based on the A-420. As discussed above, this court disagrees based on the requirement in “The Appeal Process” handbook that the teacher be shown all documents in advance of the appeal hearing. But even if the A-420 were properly relied upon by chairperson Zuckerman at the hearing, it does not suffice to support the determination. The A-420 is a preprinted form with a box checked that merely indicates, “The allegations were substantiated.” The allegations are those in the November 12, 2003 letter from principal Jones and the various student statements, both of which were referenced and made a part of the A-420.[2] The A-420 also contains a typewritten “description of incident” which simply paraphrases the student statements and reads as follows:
“Student [name redacted] alleges that Ms. Smith grabbed a statement that student wrote complaining about the teacher, ‘pushed it into her pocket and then pushed her into the door’. Another student [name redacted] alleges that Ms. Smith called the class ‘stupid’ and said that the ‘fucking has to stop’. [Name redacted] also alleges that while she was trying to help [name redacted] Ms. Smith pushed her breaking her nail against the board.”
*198 Lastly, the A-420 contains the typewritten conclusion of the assistant principal which reads as follows: “The teacher committed acts which are prohibited by the Chancellor’s Regulation A-420 Corporal Punishment and Chancellor’s Regulation A-420 Verbal Abuse which constitutes unacceptable teacher deportment.”
Significantly, as chairperson Zuckerman indicated in her decision noted above (at 195), when the assistant principal finally responded to Ms. Smith’s three calls for help, she found the room quiet. Therefore, the description of the incident and the conclusion stated in the A-420 are not based on any personal observation by any administrator; instead, they are based solely on the hearsay statements written by the students. Thus, the A-420, by itself, cannot support the U-Rating.
Without the various documents, the only evidence left is the undisputed fact that Ms. Smith made the above-quoted statements in the midst of an extremely difficult time in class. Presumably recognizing this point, chairperson Zuckerman in her decision did not find that Ms. Smith had engaged in prohibited corporal punishment. Rather, she made a finding — somewhat reluctantly — of prohibited verbal abuse based on the statement by petitioner’s union representative that the language Ms. Smith used was “inappropriate.” The chairperson’s reluctance is revealed by her finding that the evidence “leaves many questions,” by her emphasis on Ms. Smith’s repeated calls for help, by her confirmation that the assistant principal found the room quiet when she finally responded, and by her statement that Ms. Smith “unfortunately” acknowledged using “inappropriate” language at the hearing.
But even an acknowledgment of “inappropriate” language does not support a finding of prohibited verbal abuse. The Chancellor’s Regulation A-421 defines verbal abuse as:
“Language that tends to cause fear or physical or mental distress;
“Language that includes words denoting racial, ethnic, religious, or sexual orientation which tends to cause fear or physical or mental distress;
“Language that tends to threaten physical harm; or “Language that tends to belittle or subject students to ridicule.”
Respondent cannot reasonably claim that the language falls into any of the first three categories since no evidence exists of any words which caused fear or threatened harm. At most, the *199 Board can claim that the language “tends to belittle or subject students to ridicule.” But when Ms. Smith’s words are examined in context, they fail to meet that standard. Clearly, Ms. Smith was attempting to gain control of the students in a chaotic situation and to compel them to stop using inappropriate language and making inappropriate remarks. She made clear that she herself was not cursing at the students or calling them stupid. Ultimately, Ms. Smith achieved her goal because the class was quiet when the assistant principal arrived. Thus, while it may well be that Ms. Smith could have achieved her goal by using different language, it cannot reasonably be said that the language she used qualifies as prohibited verbal abuse as defined in the regulations sufficient to support an unsatisfactory rating.
Accordingly, it is hereby adjudged that the petition is granted, the denial of petitioner’s appeal of the unsatisfactory rating is annulled, and the unsatisfactory rating shall be removed from the file.

. The facts related here are taken from the decision by committee chairperson Leila G. Zuckerman, which denied Ms. Smith’s appeal of the unsatisfactory rating after a hearing on May 31, 2006. The denial was upheld by the chancellor on August 28, 2006. The petition timely challenges that denial. In the background data of Ms. Zuckerman’s decision, she states (referring to Ms. Smith): “It was clear that she became desperate.”

. As noted above, chairperson Zuckerman properly excluded the letter, and the student statements were, or should have been, excluded as well.